IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>PALMAS COUNTRY CLUB, INC.<br><br>Debtor. | CASE NO. 10-07072 (ESL)<br><br>Chapter 11 |

**URGENT JOINT MOTION AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS, PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

TO THE HONORABLE ENRIQUE S. LAMOUTTE,
U.S. BANKRUPTCY JUDGE:

COME NOW Palmas Country Club, Inc. ("PCCI" or the "Debtor") and the Puerto Rico Tourism Development Fund ("TDF"), each by their respective undersigned counsel, and respectfully submit this Urgent Joint Motion Authorizing the Sale of Certain of the Debtor's Assets, Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of all Liens, Claims, Interests and Encumbrances (the "Sale Motion").

**Preliminary Statement**

Through the Sale Motion, the Debtor and TDF seek to preserve and maximize the value of the Facilities (defined below and comprised, as described in detail below, of a golf club with two golf courses, a tennis club, and a beach club) by transferring and selling the same to TDF as payment of substantially all amounts outstanding under the parties' loan agreements. The sale is aimed at providing needed maintenance to and expeditiously re-opening the Facilities, and generating the most value and benefit to the estate and the Palmas del Mar community.

Currently, the amounts outstanding under the loan agreements surpass $30 Million. The value of the Facilities (as defined below) is substantially below $30 Million – the Facilities were

appraised on June 30, 2009 at $22 Million at a time when the Facilities were operating and generating revenue. Since June 28, 2010, the Facilities have been closed and are not operating, thus, their value has likely continued to decline. In addition, the shut-down of the Facilities and the lack of any maintenance thereto has resulted in their continued deterioration, vegetation growing unfettered, and lakes and other water and common areas receiving no critical or any other type of maintenance. The sale is aimed at, among other things, preserving the Facilities.

Further, the sale will provide the most benefit to the estate for a number of reasons. First, as described above, the Facilities will be transferred for an amount – substantially all of the outstanding amounts under the loan agreements – that far exceed the value of the Facilities. Thus, upon the transfer, the estate will be liberated from the deficiency in substantially all of its obligations to TDF. Second, since the Facilities have no equity, there would be no recoveries to any creditor other than TDF through any other viable sale or transfer, except through the sale described herein, that will yield a carve-out (detailed below) for payment of unsecured claims. Third, the sale will permit the Facilities to be re-opened and the operations re-started expeditiously, upon the closing of the Sale, which will greatly benefit the Palmas del Mar community and the estate. Fourth, there are no other offers to purchase the Facilities and, thus, this is the only viable alternative that will allow for the re-opening of the Facilities, a recovery to unsecured creditors in a no-equity case, and the most benefit to the various constituents of the estate.

For these reasons and those set forth below, TDF and the Debtor request that the Court approve the Sale Motion.

**Jurisdiction and Venue**

1. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of this proceeding and of the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. §§101 *et. seq.* (the "Bankruptcy Code"), Rules 2002, 4001(c)(2), 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Bankruptcy Rules.

**Background**

A. **The Bankruptcy Case**

4. On August 4, 2010, the Debtor filed a voluntary petition for relief under the provisions of 11 U.S.C. Chapter 11 and, as of that date, has been managing its affairs as debtor-in-possession pursuant to 11 U.S.C. § 1107. See Dkt. No. 1.

5. The Debtor is the owner of certain real estate facilities located in Palmas del Mar, Humacao, PR, consisting of an eighteen (18) hole championship golf course known as the Flamboyan Course, an eighteen (18) hole golf course known as the Palm Course, a 22,200 square feet golf clubhouse, a 5,600 square feet beach club house, a tennis club, and other related facilities (collectively, the "Facilities").

B. **The Loan Documents**

6. The Debtor and the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, an instrumentality of the government of the Commonwealth of Puerto Rico ("AFICA"), entered into a Loan Agreement, dated October

26, 2000 (the "AFICA Loan Agreement"), for the financing of the costs related to the development, construction, equipping, administration and operation of the Facilities.

7. Pursuant to the terms of the AFICA Loan Agreement, AFICA agreed to issue bonds in the principal amount of $30,000,000.00 (the "Bonds") and to lend that amount to PCCI for the development, construction, equipping, and operation of the Facilities. In exchange, PCCI agreed to repay the Bonds pursuant to the terms of the AFICA Loan Agreement.

8. In furtherance of the AFICA Loan Agreement, and pursuant to the terms of AFICA's Organic Act, Act No. 121 of June 27, 1997, and a Trust Agreement entered into by AFICA and PaineWebber Trust Company of Puerto Rico (now UBS Trust Company of Puerto Rico), as trustee (the "Bond Trustee"), dated October 26, 2000 (the "Trust Agreement"), AFICA issued the Bonds.

9. To facilitate and make possible the issuance and sale of the Bonds, on October 26, 2000, TDF (which is also an instrumentality of the government of the Commonwealth of Puerto Rico) and PCCI executed a Letter of Credit and Reimbursement Agreement, pursuant to which TDF issued a Letter of Credit (the "TDF Letter of Credit") to the Bond Trustee in effect guaranteeing the Bonds and PCCI's payment obligations relating thereto under the AFICA Loan Agreement (the "Reimbursement Agreement"). Pursuant to the TDF Letter of Credit, TDF is required to make payments to the Bond Trustee sufficient to pay interest and principal on the Bonds when due if PCCI does not make such payments. Pursuant to the Reimbursement Agreement, PCCI is required to reimburse TDF for any payments made by TDF under the TDF Letter of Credit, and to pay certain fees and expenses to TDF.

10. On October 19, 2009, TDF extended to PCCI a non-revolving line of credit in the amount of $525,000.00 for the partial financing of several of the operating expenses for the Facilities incurred by PCCI (the "TDF Agreement").

11. The Debtor's payment and other obligations under the AFICA Loan Agreement, the Trust Agreement, the TDF Agreement and the Reimbursement Agreement (collectively, the "Financing Agreements") are guaranteed by substantially all of the assets of PCCI, including, but not limited to, the Facilities, all real property, all tangible and intangible personal property, including fixtures, and all accounts receivables and cash (collectively, the "Collateral").

12. As inducement for, and in consideration of TDF issuing the TDF Letter of Credit and making or guaranteeing the loans and advances and providing other financial accommodations to the Debtor under the Financing Agreements (and to secure and satisfy the obligations of PCCI under the Financing Agreements), the Debtor executed the following additional documents (each as may have been subsequently amended or modified): (1) a mortgage note payable to the bearer in the principal amount of $26,000,000.00, bearing interest at a rate per annum equal to the greater of (i) 7.25% or (ii) 3% over and above the Prime Rate, due on December 20, 2030, executed on October 26, 2000, before Notary Public Alfredo Alvarez Ibáñez under affidavit number 1008; (2) a mortgage note payable to the bearer in the principal amount of $4,000,000.00, bearing interest at a rate per annum equal to the greater of (i) 7.25% or (ii) 3% over and above the Prime Rate, due on December 20, 2030, executed on October 26, 2000, before Notary Public Alfredo Alvarez Ibáñez, under affidavit number 1009; (3) a mortgage note payable to the bearer in the principal amount of $500,000.00, bearing interest at a rate per annum equal to the greater of (i) 7.25% or (ii) 3% over and above the Prime Rate, due on December 20, 2030, executed on September 19, 2007, before Notary Public Paul René Cortés

Rexach, under affidavit number 3845; (4) a Master Security Agreement, executed on October 26, 2000; (5) an Assignment of Rents, Licenses and Proceeds and Security Agreement, executed on October 26, 2000; (6) an Assignment of Contracts and Security Agreement, executed on October 26, 2000; and (7) certain other agreements, financing statements, documents and instruments (collectively with the Financing Agreements, the "Loan Documents").

13. The Debtor has defaulted in its payment obligations under the Financing Agreements. As a result, as of the petition date, TDF has paid $2,519,255.30 to the Bond Trustee pursuant to the TDF Letter of Credit with respect to interest on and the principal of the Bonds, thus keeping the Bonds current. The Debtor recognizes that this amount, plus applicable interest and late fees, is due and payable by the Debtor to TDF under the Reimbursement Agreement. In addition, as of the Petition Date, the Debtor recognizes and affirms that the following additional amounts are currently outstanding, due and payable under the Financing Agreements: $553,149.55 is due and payable under the TDF Agreement, and $760,408.88 is due and payable under the Reimbursement Agreement with respect to fees, expenses and other amounts (in addition to the amount described above) (these amounts, together with the outstanding balance of the Bonds, which, as of the Petition Date, amounts to $27,160,000, and which will continue to be paid by TDF pursuant to the TDF Letter of Credit, and the related amounts payable under the AFICA Loan Agreement are collectively referred to as the "Loans").

14. Thus, as of the Petition Date, the balance of the Loans was approximately $30,992,813.73.

### C. The Pre-Petition Value and Operation of the Facilities

15. On June 30, 2009, McCloskey, Mulet, and Bonnín Appraisers, PSC appraised the Facilities at a value of $22 Million using the average of the sale and income approaches. See **Exhibit 1**.

16. At the time of the appraisal, the Facilities were operating and generating revenue.

17. Since on or about June 28, 2010, the Debtor discontinued its operations of the Facilities and terminated all employees. As of this date, the Facilities remain closed.

18. The shut-down of and lack of any maintenance to the Facilities has had a highly detrimental effect not only on the Facilities themselves, but also on the Debtor's employees, who have been laid off, and the surrounding community, which has been subjected to a continuously deteriorating and abandoned common area. Among other things, the lakes and vegetation in the golf courses has received no maintenance or upkeep.

19. Thus, it is highly likely that the value of the Facilities has continued to decrease since the date of the appraisal, as a result of the shut-down of the operations and the lack of maintenance thereto.

20. TDF, along with other creditors and estate constituents, have been in negotiations with the Debtor for months trying to reach a resolution that would prevent the further deterioration of the Facilities and ensure that the Facilities are re-opened and operating.

21. Accordingly, since the filing of the petition, the aforementioned parties have continued negotiations and have agreed to the herein proposed sale and transfer of the Facilities to TDF, which in the business judgment of the Debtor is the best option available, and the only immediate vehicle that will halt the deterioration of the Facilities, maximize the value and recovery to the estate of the same, and benefit the estate.

## Basis for Relief

A. <u>**The Sale**</u>

22. The Parties understand that given the conditions of the Facilities and the urgency with which the same require maintenance, and to allow for the re-opening of the operations, the decision to sell and transfer the assets to TDF is a sound business decision and the best alternative for the estate, its creditors, and the Palmas del Mar community.

23. Pursuant to the terms of the sale, the Debtor shall sell and transfer, pursuant to section 363 of the Bankruptcy Code, the Facilities to TDF, through a deed for partial payment in kind (the "Sale"). Upon closing of the Sale and execution of the deed for partial payment in kind, the Debtor's estate shall be deemed to have satisfied its obligations under the Financing Agreements and the Loan Documents, and the amounts due under the Loans (except and excluding the obligations and amounts due under the TDF Agreement).[1] After the closing of the Sale, TDF will continue to make all payments of interest and principal due under the Bonds to the Bond Trustee pursuant to the TDF Letter of Credit. Further, upon closing of the Sale, and as a condition to the same, the Debtor's parent company shall provide a carve-out, in the amount of $100,000.00 (the "Carve-Out"), to be distributed to unsecured creditors (other than TDF), in accordance with the Bankruptcy Code, pursuant to a plan.

B. <u>**The Court Should Approve the Sale**</u>

    i. <u>**Standard to Approve the Sale**</u>

24. First, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

---

[1] As of the Petition Date, approximately $553,149.55 remains outstanding under the TDF Agreement, which amounts are secured by the Collateral including, among others, the cash collateral. Said secured claim will be satisfied pursuant to a plan through the surrender of any remaining cash or other collateral that is not transferred to TDF at the closing of the Sale.

-8-

property of the estate." 11 U.S.C. §363(b)(1). A debtor in possession is given these rights by Section 1107(a) of the Bankruptcy Code. 11 U.S.C. §1107(a). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

25. Courts have consistently held that approval of a proposed sale of property pursuant to Section 363(b) is appropriate if the record reveals a "good business reason" for approval of the proposed sale outside of a plan. See In re Eldercare, 390 B.R. 762, 770 (Bankr. D. Conn. 2008); In re Phoenix Steel Corp., 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a Section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith."). The Court may find that a sound business purpose for the sale of assets outside the ordinary course of business exists when such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. Comm. of Equity Security Holders v. The Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2nd Cir. 1983).

26. Second, Section 363(f) of the Bankruptcy Code allows a debtor to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

27. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;

>(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>(4) such interest is in bona fide dispute; or
>(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

28. Therefore, in a sale of assets pursuant to Section 363(b) the debtor must meet one of the five requirements established under 363(f) in order for the same to be approved.

29. Finally, pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993). The good faith requirement is related to the integrity of the purchaser's conduct in the course of the sale proceedings. In re Rock Industries Machinery Corp., 572 F.2d 1198 (7th Cir. 1978).

30. As described below, the Sale satisfies each of the elements necessary for the Court to approve the same.

  **ii.**  **The Court Should Approve the Sale.**

31. The Debtor and TDF submit that the Sale satisfies the "sound business reason test", is a proper exercise of Debtor's business judgment, and is in the best interest of the estate and should be approved for a number of reasons. First, through the Sale, the Debtor is satisfying an obligation of over $30 Million, which far exceeds the value of the Facilities. As described above, the amounts loaned pursuant to the Loan Documents exceed $30 Million and the same are secured by first priority perfected liens over the Facilities. Thus, the amounts due under the Loans far exceed the appraised (at market or liquidation) value of the Facilities, even under an appraisal conducted when the Facilities were operating and maintained (which is not currently the case). Accordingly, the Debtor understands that the Facilities cannot be sold for a value that

-10-

equals or exceeds the amounts payable under the Loans. Second, since the Facilities have no equity, there would be no recoveries to any creditor other than TDF through any other viable sale or transfer, except through the Sale described herein, that will yield the Carve-Out for payment of unsecured claims. Third, the Sale allows for the Facilities to be re-opened and the operations re-started expeditiously, upon the closing of the Sale, which will greatly benefit the Palmas del Mar community and the estate. Fourth, there are no other offers to purchase the Facilities and, thus, this is the only viable alternative that will allow the re-opening of the Facilities, a recovery to unsecured creditors in a no-equity case, and the most benefit to the various constituents of the estate.[2]

32. Accordingly, the Debtor understands that the Sale is critical for preserving the value of the Facilities, and in the best interest of the estate and should be approved. See In re Wiedbolt Stores, Inc., 92 B.R. 309, 312 (N.D. Ill. 1988) (affirming the bankruptcy court's decision authorizing a private sale pursuant to section 363 of the Bankruptcy Code whereby the debtor's assets, valued at approximately $54.5 Million, where transferred to the secured creditor in exchange for such creditor releasing approximately $64 Million of its claim).

33. In addition, the Sale should be free and clear of all claims, liens, and interests, as the Debtor and TDF submit that at least one of the requirements of Section 363(f) of the Bankruptcy Code, if not more, are met since, among others, TDF is the primary secured creditor and consents to the Sale. Further, pursuant to the Sale, neither the Bond Trustee nor the Bondholders will be affected, since TDF will continue to pay the Bonds as required under the

---

[2] Upon the closing of the sale, TDF intends to sell the Facilities to Palmas Athletic Club, Inc. ("PAC") (a non-profit entity created by certain Palmas del Mar residents specifically to operate and preserve the Facilities). Pursuant to this transaction, PAC has agreed to purchase from TDF the Facilities by assuming, pursuant to new agreements between PAC and TDF, PCCI's pre-petition obligations to TDF under the Loan Documents, and, upon closing, to re-open, operate, and maintain the Facilities.

TDF Letter of Credit. Moreover, at closing, TDF will constitute a new mortgage and other security interests in favor of the Bond Trustee, over the same assets and to the same extent and priority as the security interests granted to the Bond Trustee under the pre-petition Loan Documents, and, thus, will preserve the rights of the Bondholders.

34. Finally, the Debtor requests that the Court determine that TDF is a "good faith" purchaser within the purview of Section 363(m) of the Bankruptcy Code, as the Sale was negotiated at arm's-length with TDF and the Debtor represented by counsel and all parties to the agreed upon Sale have acted in good faith. Further, the Sale is in the best interest of the estate.

## Conclusion

**WHEREFORE**, TDF and the Debtor hereby request that the Court enter an order: (i) approving the Sale and transfer of the Facilities to TDF under Section 363 of the Bankruptcy Code; (ii) shortening the time to respond to this Stipulation to ten (10) days from the date of filing; and (iii) granting any further relief the Court deems appropriate.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 16th of August, 2010.

## LOCAL RULE CERTIFICATION

The undersigned hereby certify that, pursuant to the requirements of Local Bankruptcy Rule 9013-1(f) they have carefully examined the matter in this motion and concluded that there is a true need for an emergency determination, for the reasons set forth above.

## NOTICE OF TIME TO RESPOND

Within five (5) business days after service as certified below, any party in interest who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this motion with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the motion will be deemed unopposed and may be deemed automatically granted, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interests of justice require otherwise.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system, including the U.S. Trustee. In addition, on this date, we have sent a copy of the foregoing to all of the creditors and/or entities listed on the list of creditors included under Docket No. 1, including the Trustee, by first class mail.

| | |
|---|---|
| **ALEXIS FUENTES HERNANDEZ**<br>*Attorney for Debtor*<br>PO Box 9022726<br>San Juan, PR 00902-2726<br>Tel. (787) 722-5216<br>Fax (787) 722-5206<br><br>*s/Alexis Fuentes-Hernández*<br>Alexis Fuentes-Hernández<br>USDC NO. 217201<br>alex@fuentes-law.com | **CHARLES A. CUPRILL, P.S.C. LAW OFFICES**<br>*Attorneys for Puerto Rico Tourism Development Fund*<br>356 Fortaleza St., Second Floor<br>San Juan, PR 00901<br>Tel: (787) 977-0515<br>Fax: (787) 977-0518<br><br>*s/ Charles A. Cuprill*<br>Charles A. Cuprill<br>USDC-PR 114312<br><br>-and-<br><br>**O'NEILL & BORGES**<br>*Attorneys for Puerto Rico Tourism Development Fund*<br>American International Plaza<br>250 Muñoz Rivera Avenue,<br>Suite 800<br>San Juan, Puerto Rico 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*s/ Luis C. Marini-Biaggi*<br>Luis C. Marini-Biaggi<br>USDC No. 222301<br>E-Mail: luis.marini@oneillborges.com |